CLERK U.S. DISTRICT COURT

JUL 7 2008

CENTRAL DISTRICT OF CALIFORNIA
BY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

EDMOND H. GALTON,

        Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. EDCV 07-0824-DOC (JTL)

ORDER ADOPTING FINDINGS,
CONCLUSIONS AND
RECOMMENDATIONS OF UNITED
STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Complaint, all the records and files herein, and the Report and Recommendation of the United States Magistrate Judge. The Court concurs with and adopts the findings, conclusions and recommendations of the Magistrate Judge.

IT IS ORDERED that this matter be remanded for further administrative action consistent with the Report and Recommendation.

DATED: July 7, 2008

_David O. Carter_
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

```
FILED
CLERK, U.S. DISTRICT COURT

MAY - 7 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                           DEPUTY
```

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDMOND H. GALTON,<br><br>    Plaintiff,<br><br> v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | Case No. EDCV 07-0824-DOC (JTL)<br><br>REPORT AND RECOMMENDATION OF<br>UNITED STATES MAGISTRATE JUDGE |

   The Court submits this Report and Recommendation to the Honorable David O. Carter, United States District Judge, pursuant to 28 U.S.C. Section 636 and General Order 05-07 of the United States District Court for the Central District of California.

## BACKGROUND

   On July 13, 2007, Edmond H. Galton ("plaintiff") filed a Complaint seeking review of the Social Security Administration's denial of his applications for Disability Insurance Benefits and Supplemental Security Income benefits.  On January 15, 2008, defendant filed an Answer to the Complaint.  Thereafter, on March 19, 2008, the parties filed their Joint Stipulation.

   The matter is now ready for decision.

///

1

## BACKGROUND

2    On October 28, 2003, plaintiff filed applications for Disability Insurance Benefits and

3  Supplemental Social Security Income benefits alleging a disability onset date of April 20, 1995.[1]

4  (Administrative Record ["AR"] at 363-69; 609-15).   The Commissioner denied plaintiff's

5  application for benefits both initially and upon reconsideration.  (AR at 310-13, 316-21, 620,

6  628).  Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

7  (AR at 322).

8    On May 4, 2005, the ALJ conducted a hearing in San Bernardino, California. (See AR

9  at 636-62). Plaintiff appeared at the hearing with counsel and testified. (AR at 640-48, 650-51,

10  653-55, 660-61).   Armon H. Toomajian, M.D., a medical expert, and Sandra Fioretti, a

11  vocational expert, also testified at the hearing.  (AR at 648-50, 651-53, 653-59).

12    On July 26, 2005, the ALJ issued his decision denying benefits to plaintiff.  (AR at 29-

13  40).   The ALJ determined that plaintiff had the following severe impairments: dyslexia,

14  degenerative disc disease, bilaterally carpal tunnel syndrome and obesity.  (AR at 32).  The

15  ALJ found that plaintiff's conditions did not meet or equal any of the criteria of any impairment

16  listed in Appendix 1 of the regulations.  (Id.).  The ALJ determined plaintiff did not retain the

17  residual functional capacity to perform his past relevant work as an auto detailer, tow truck

18  driver, or janitor. (AR at 36). The ALJ concluded that plaintiff did, however, retain the residual

19  functional capacity to perform a significant range of light work and that included work as a

20  Cashier II, Ticket Taker, Outside Delivery, Account Clerk and Assembler, as defined by the

21  Dictionary of Occupational Titles ("DOT").  (AR at 37-38, 39).  Thus, the ALJ concluded that

22  plaintiff was not disabled through the date of the decision.  (AR at 40).  The Appeals Council

23  denied plaintiff's timely request for review of the ALJ's decision.  (AR at 8-11).

24    Thereafter, plaintiff appealed to the United States District Court.

25  _____

26    [1] Plaintiff has previously filed multiple applications for Supplemental Security Income Benefits
and Disability Insurance Benefits.  (See AR at 29) ("The record shows that [plaintiff] filed previous
27  applications for Disability Insurance Benefits and Supplemental Security Income payments on
March 1, 1978; October 28, 1980; August 18, 1981; October 23, 1996; February 25, 1998; and
28  February 3, 2000.  The most recent application was appealed and on November 24, 2000, was
denied [AR at 299-308]...").

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims:

1.      The ALJ improperly discredited plaintiff's allegations of pain.

2.      The ALJ failed to present a complete hypothetical to the vocational expert at the May 4, 2005 ALJ hearing.

3.      The ALJ failed to properly consider the combination of plaintiff's impairments when making the disability determination.

4.      The ALJ failed to properly evaluate plaintiff's motion to re-open his prior case.

**STANDARD OF REVIEW**

Under 42 U.S.C. Section 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**DISCUSSION**

**A.      The Sequential Evaluation**

A claimant is disabled under Title II of the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner

1 | has established a five-step sequential process to determine whether a claimant is disabled.
2 | 20 C.F.R. §§ 404.1520, 416.920.
3 |       The first step is to determine whether the claimant is presently engaging in substantially
4 | gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging
5 | in substantially gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S.
6 | 137, 141 (1987).   Second, the ALJ must determine whether the claimant has a severe
7 | impairment. Parra, 481 F.3d at 746. Third, the ALJ must determine whether the impairment
8 | is listed, or equivalent to an impairment listed, in Appendix I of the regulations. Parra, 481 F.3d
9 | at 746.   If the impediment meets or equals one of the listed impairments, the claimant is
10 | presumptively disabled. Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the
11 | impairment prevents the claimant from doing past relevant work. Parra, 481 F.3d at 746. If
12 | the claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step
13 | and must determine whether the impairment prevents the claimant from performing any other
14 | substantially gainful activity. Id.
15 |       The claimant bears the burden of proving steps one through four, consistent with the
16 | general rule that at all times, the burden is on the claimant to establish his or her entitlement
17 | to disability insurance benefits. Id. Once this prima facie case is established by the claimant,
18 | the burden shifts to the Commissioner to show that the claimant may perform other gainful
19 | activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).
20 | **B.**   **The ALJ's Hypothetical to the Vocational Expert**
21 |       Plaintiff argues that the ALJ erred when he determined that plaintiff could perform work
22 | that exists in significant numbers in the regional and national economies. (Joint Stipulation at
23 | 18-20). In particular, plaintiff alleges that the ALJ's reliance on the testimony of the vocational
24 | expert was improper because the ALJ failed to present the vocational expert with a complete
25 | hypothetical. (Joint Stipulation at 18).
26 |       At the hearing, the vocational expert asked plaintiff a number of questions about his past
27 | relevant work as a car washer, janitor and tow truck driver.   (See AR at 653-55).   The
28 | vocational expert testified that plaintiff's "detailed, car wash position" is a medium, unskilled

occupation with a level two Specific Vocational Preparation ("SVP")[2];  a janitor was a medium, semi-skilled occupation with a level three SVP but, as plaintiff performed it, unskilled; and a tow truck driver was a medium, semi-skilled occupation with a level three SVP, which plaintiff performed at the heavy level.[3]  (AR at 656).

Next, the ALJ presented the vocational expert with three hypothetical individuals.  First, the ALJ asked the vocational expert to:

> Assume that we have a younger individual, as defined in the Social Security regulations, with a tenth grade education, a prior work experience that you've indicated was medium, unskilled to semi-skilled, if the limitation were to light work, as defined in the Social Security regulations, and to simple, repetitive tasks, and only occasionally using the left upper extremity, but frequently using the right upper extremity, would

---

[2] The DOT describes the duties and requirements of the numerous occupations that it chronicles and assigns each job a Specific Vocational Preparation ("SVP") level.  The SVP is defined as the amount of time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  A level two SVP requires "[a]nything beyond short demonstration up to and including 1 month."  A level three SVP requires "[o]ver 1 month up to and including 3 months."  Dictionary of Occupational Titles, Fourth Edition, 1991, Appendix C, available at http://www.oalj.dol.gov/libdot.htm (follow "Appendices" hyperlink; then follow "Appendix C: Components of the Definition Trailer " hyperlink).

[3] The DOT also assigns each occupation a strength rating that represents the overall strength requirements that are considered to be important for average, successful work performance.  The DOT defines medium work as:

> Exerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects.  Physical Demand requirements are in excess of those for Light Work.

The DOT defines heavy work as:

> Exerting 50 to 100 pounds of force occasionally, and/or 25 to 50 pounds of force frequently, and/or 10 to 20 pounds of force constantly to move objects.  Physical Demand requirements are in excess of those for Medium Work.

Dictionary of Occupational Titles, Fourth Edition, 1991, Appendix C.

1    any of [plaintiff's] prior work activities be available, and if not,

2    would there be other work activity that exists either nationally

3    or locally, that could be performed?

4 (AR at 656).  The vocational expert testified that such a person would not be able to perform

5 any of plaintiff's prior work activities, but that such a person could perform work as a cashier

6 II, ticket taker, and outside deliverer, which the vocational expert indicated are all classified as

7 light and unskilled occupations with a level two SVP.  (Id.).

8    The ALJ then presented the vocational expert with a second hypothetical.  He asked the

9 vocational expert to assume someone with the same educational profile, same limitations

10 regarding frequent use of the right upper extremity and occasional use of the left upper

11 extremity, the same limitation with respect to simple, repetitive tasks, and limitations regarding

12 sedentary work as defined by the regulations.[4]  (AR at 657).  The vocational expert testified that

13 such a person could perform positions that exist in both the national and local economies such

14 as a charge account clerk, which is a sedentary and unskilled occupation with a level two SVP,

15 and a limited number of sedentary and unskilled assembly positions.[5]  (AR at 657).

16

17 ————————————

18 [4] The DOT defines sedentary work as: Exerting up to 10 pounds of force occasionally
(Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force
frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull,
19 or otherwise move objects, including the human body.  Sedentary work involves sitting most of the
time, but may involve walking or standing for brief periods of time.  Jobs are sedentary if walking
20 and standing are required only occasionally and all other sedentary criteria are met.  Dictionary of
Occupational Titles, Fourth Edition, 1991, Appendix C.
21

22 [5] At the hearing, the vocational expert explained the limitation on the number of assembly
positions that plaintiff could perform:

23    There would be a limited number of assembly positions because
24    of the upper extremity limitations.  Just looking at sedentary and
unskilled assembly positions, it's a broad category.  I think they
25    would be eroded by 90-percent.  It would be things that could be
done using either the hands alternately or not so precise that a
26    non-dominant hand to be [sic] used.  That would result in there
being 1,000 positions regionally, and 15,500 positions nationally.
27    And that would take into account a broad range of categories.

28 (AR at 657).

Finally, the ALJ asked the vocational expert to assume a hypothetical individual with the same vocational profile as plaintiff and subject to the same limitations to which plaintiff testified at the hearing - "the need to walk with a cane, lay down two to three hours mid-day, secondary to back pain, walking with a cane, lifting five to ten pounds, no squatting." (AR at 657-58). The ALJ asked the vocational expert if with "those limitations, and the others that [plaintiff has] testified to, would any of the prior work activity be available . . . [or] would there be other work activity that exists either nationally or locally that could be performed?"[6] (AR at 658). The vocational expert testified that all work would be eliminated. (Id.).

In his decision, the ALJ determined that plaintiff had the following residual functional capacity:

> [Plaintiff] retains the physical residual functional capacity for a light level of work capacity. [Plaintiff] can lift and carry twenty pounds occasionally and ten pounds frequently and he can sit or stand and/or walk approximately six hours in an eight-hour workday with regular breaks. He would be limited, in the upper extremity, to frequent but not continual pushing, pulling, turning, twisting or pinching. [Plaintiff] retains the mental residual functional capacity to perform simple, repetitive and more complex tasks. He would be able to avoid normal work hazards, interact appropriately with others and would relate adequately to authority figures. He can work independently,

---

[6] At the hearing, plaintiff also testified that he has to take breaks while doing minor cooking and cleaning (AR at 640), that the anti-depressant Trazodone makes him sleepy and he has to take a nap every day (AR at 642), that he gets tired easily due to constant pain and has to lay down due to his back pain (AR at 643), he has trouble gripping items due to hand cramps and limited hand control (AR at 644), he must lay down every day from 12:00 p.m. to 2:30 or 3:00 p.m. due to lower back pain (AR at 645), he can lift five to ten pounds, at most (AR at 645), he can sit for about 45 minutes in a cushioned chair before his tail bone begins to ache and he has to stand up and walk around (AR at 646), he has trouble reaching with his left upper extremity (AR at 646), he cannot squat (AR at 647), he has dyslexia and has to ask someone else to read things for him (AR at 648), and he is unable to steady himself (AR at 651).

1   sustain regular activity for eight hours per day, five days per

2   week with normal breaks; and he would be able to concentrate

3   adequately for this purpose as well as use personal or public

4   transportation without assistance.

5   (AR at 38-39).

6   　　　The ALJ discussed the vocational expert's testimony in his decision and relied on the

7   vocational expert's responses to the first two hypothetical questions in concluding that plaintiff

8   "is capable of making a successful adjustment to work that exists in significant numbers in the

9   regional and national economies." (AR at 39).  The ALJ noted that the vocational expert

10   testified that a hypothetical person of plaintiff's age, education, past relevant work and residual

11   functional capacity, as determined, is capable of working as a cashier II, ticket taker or an

12   outside deliverer. (AR at 37).  The ALJ also noted that the vocational expert testified that

13   plaintiff would be able to work as a charge account clerk and assembler even if he was limited

14   to unskilled sedentary work. (AR at 38).

15   　　　Plaintiff argues that the ALJ improperly excluded plaintiff's pain and other symptoms

16   from the hypotheticals on which the ALJ relied. (Joint Stipulation at 17, 19).  Plaintiff argues

17   that the ALJ ignored the vocational expert's testimony that, when considering the limitations

18   to which plaintiff testified, the vocational expert found that plaintiff would not be able to engage

19   in any work at all.  Plaintiff argues that his functional limitations preclude him from working in

20   the occupations that the vocational expert identified. Plaintiff alleges that he would "have a

21   difficult time making change or adding up a customer's bill as a "cashier II" due to his dyslexia;

22   due to his back pain and need to lie down two to three times a day, he would have difficulty

23   working as a ticket taker; that he would have difficulty as an outside deliverer because he walks

24   with a cane, has minimal use of his hands based on his carpal tunnel syndrome, and has lifting

25   restrictions. (Joint Stipulation at 19-20).

26   　　　At step five of the sequential evaluation, the ALJ must determine whether the claimant's

27   impairment prevents him from performing any other substantial gainful activity. Parra, 481 F.3d

28   at 746.  At this step, the burden is on the Commissioner to show that the claimant may perform

1   other gainful activity. <u>Lounsburry</u>, 468 F.3d at 1114. This burden may be met by eliciting the

2   testimony of a vocational expert in response to a hypothetical that sets out all of

3   the limitations and restrictions of the claimant. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 756 (9th

4   Cir. 1989).

5        In order for the vocational expert's testimony to constitute substantial evidence, the ALJ

6   must present the vocational expert with a hypothetical that is based on medical assumptions

7   supported by substantial evidence in the record that reflects each of the claimant's limitations.

8   <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1044 (9th Cir. 1995); <u>Roberts v. Shalala</u>, 66 F.3d 179, 184

9   (9th Cir. 1995). The hypothetical should be "accurate, detailed and supported by the medical

10   record." <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1101 (9th Cir. 1999); <u>Osenbrock v. Apfel</u>, 240 F.3d

11   1157, 1165 (9th Cir. 2001).

12        The ALJ is required to make specific findings justifying the decision to discredit certain

13   alleged impairments, and those justifications must be supported by substantial evidence. <u>See</u>

14   <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984); <u>Embrey v. Bowen</u>, 849 F.2d 418, 422

15   (9th Cir. 1988). Thus, it is proper to omit an alleged impairment from a hypothetical if the

16   omission of the impairment is supported by substantial evidence in the record. <u>Osenbrock</u>, 240

17   F.3d at1165 (9th Cir. 2001). Where a hypothetical fails to reflect each of the claimant's

18   limitations that are supported by substantial evidence, the vocational expert's answer has no

19   evidentiary value. <u>Gallant</u>, 753 F.2d at 1456 ("Because neither the hypothetical nor the answer

20   properly set forth all of [claimant's] impairments, the vocational expert's testimony cannot

21   constitute substantial evidence to support the ALJ's findings.").

22        Here, the ALJ relied on the testimony of the vocational expert in response to two

23   hypothetical questions. Neither hypothetical, however, incorporated the functional limitations

24   that arose from plaintiff's dyslexia. An ALJ may limit a hypothetical to those impairments that

25   are supported by substantial evidence in the record, <u>see</u> <u>Osenbrock</u>, 240 F.3d at 1165 (citing

26   <u>Magallanes</u>, 881 F.2d at 756-57). <u>Cf</u>. <u>Osenbrock</u>, 240 F.3d at 1165 (the ALJ's decision to omit

27   depression from the hypothetical question was supported by substantial evidence in that the

28   most recent medical evaluations by treating physicians had only diagnosed claimant's

1  depression as a mild impairment). Here, among other impairments, the ALJ found that the
2  dyslexia from which plaintiff suffered was a severe impairment. (AR at 32). Yet the ALJ failed
3  to include as part of his hypothetical any of the symptoms of dyslexia and, moreover, failed to
4  explain why he omitted such information from the hypothetical questions he presented to the
5  vocational expert. Plaintiff has repeatedly stated that his dyslexia is one of the impairments
6  that prevents him from working. (See AR at 76, 260, 363, 395). Furthermore, the record
7  contains numerous references to the impact that the dyslexia has had on plaintiff's functional
8  limitations. (See AR at 76, 260, 262). Plaintiff has indicated that he is unable to read and that
9  other people must read for him. (AR at 100, 233, 648). Andrew J. Rooks, M.D., a board
10 certified psychiatrist, stated in his psychiatric evaluation that plaintiff would have difficulty
11 performing detailed and complex tasks, especially if the tasks involved any form of reading or
12 writing, that plaintiff would be able to perform work activities on a consistent basis if it did not
13 involve the need to read, write or calculate, that he would need significant supervision if
14 reading, writing or calculating were involved in the work. (AR at 264). Furthermore, in his
15 November 24, 2000 decision, the ALJ determined that plaintiff was "limited to the performance
16 of simple repetitive tasks in a low stress environment not requiring the ability to read or write."
17 (AR at 301).

18      Based on the foregoing, the Court finds that the vocational expert's testimony on which
19 the ALJ relied was elicited in response to an incomplete hypothetical, which did not take into
20 account all of plaintiff's severe impairments. For example, one of the jobs that the vocational
21 expert stated plaintiff could perform, and the ALJ agreed, was a "cashier II." (AR at 656). That
22 position requires someone who "[r]ecomputes or computes bills, itemized lists, and tickets
23 showing amount due, using adding machine or cash register, [m]akes change, cashes checks,
24 and issues receipts or tickets to customers, [r]ecords amounts received and prepares reports
25 of transactions, [r]eads and records totals shown on cash register tape and verifies against
26 cash on hand. . . May give cash refunds . . . " Dictionary of Occupational Titles, Fourth Edition,
27 1991, available at http://www.oalj.dol.gov/libdot.htm (follow "Definitions" hyperlink; then follow
28 "201.162-010 to 219.362-046" hyperlink). Plaintiff could not read. Dr. Rooks, moreover, found

1 │ that plaintiff "had difficulty calculating." For example, plaintiff "could not multiply 8 X 4, nor 4
2 │ X 3, and said $1.00 - .83 = $.12." (AR at 262).

3 │       Because the hypothetical questions did not set out all of plaintiff's impairments, the
4 │ vocational expert's opinion that plaintiff had a residual working capacity has no evidentiary
5 │ value. See Gallant, 753 F.2d at 1456. Thus, the ALJ's conclusion that plaintiff was capable
6 │ of making a successful adjustment to work that exists in significant numbers in the regional and
7 │ national economies was not based on substantial evidence in the record and the ALJ erred in
8 │ his step five determination.

9 │       Moreover, the ALJ failed to ask the vocational expert whether her testimony conflicted
10 │ with the DOT and, if so, whether there was a reasonable explanation for the conflict. (See AR
11 │ at 653-59). An ALJ may not properly rely on a vocational expert's testimony regarding the
12 │ requirements of a particular job without first inquiring whether the testimony conflicts with the
13 │ DOT. Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) ("[W]e address the question
14 │ whether, in light of the requirements of [Social Security Ruling] 00-4p, an ALJ may rely on a
15 │ vocational expert's testimony regarding the requirements of a particular job without first
16 │ inquiring whether the testimony conflicts with the Dictionary of Occupational Titles. We hold
17 │ than an ALJ may not."). SSR 00-4p provides:

18 │         When a VE [vocational expert] or VS [vocational specialist]
19 │         provides evidence about the requirements of a job or
20 │         occupation, the adjudicator has an affirmative responsibility to
21 │         ask about any possible conflict between that VE or VS
22 │         evidence and information provided in the DOT. In these
23 │         situations, the adjudicator will: [a]sk the VE or VS if the
24 │         evidence he or she has provided conflicts with information
25 │         provided in the DOT; and [i]f the VE's or VS's evidence
26 │         appears to conflict with the DOT, the adjudicator will obtain a
27 │         reasonable explanation for the apparent conflict.

28 │ ///

1  If the ALJ does not ask the vocational expert whether his testimony conflicts with the DOT, the

2  reviewing court cannot determine whether substantial evidence supports the ALJ's findings.

3  Massachi, 486 F.3d at 1153-54 (citing Prochaska v. Barnhart, 454 F.3d 731, 736 (7th Cir.

4  2006)); see also Travis v. Astrue, 477 F.3d 1037, 1042 (8th Cir. 2007) ("This court will not

5  substitute its opinion for the ALJ's, who is in a better position to gauge credibility and resolve

6  conflicts in evidence.").

7  **C.    Remand is Required to Remedy Defects in the ALJ's Decision**

8        The choice of whether to reverse and remand for further administrative proceedings, or

9  to reverse and simply award benefits, is within the discretion of the Court. McAlister v. Sullivan,

10  888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would

11  remedy defects in the ALJ's decision, and where the record should be developed more fully.

12  Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).

13       Here, the Court finds remand appropriate.   The ALJ failed to pose a complete

14  hypothetical to the vocational expert in accordance with his findings.  On remand, the ALJ must

15  present a hypothetical to the vocational expert which includes all of his findings regarding

16  plaintiff's functional limitations.[7]

17

18                              **RECOMMENDATION**

19       IT THEREFORE IS RECOMMENDED that the District Court issue an Order: (1)

20  approving and adopting this Report and Recommendation and (2) remanding the decision of

21  the Commissioner of the Social Security Administration for further administrative action

22  ///

23

24 _____

25  [7]  In the Joint Stipulation, plaintiff also contends that the ALJ erred in failing to properly credit
plaintiff's allegations of pain, consider the combined effects of plaintiff's impairments and evaluate

26  plaintiff's motion to re-open his prior case.  As explained above, however, the ALJ's error in failing to
present the vocational expert with a complete hypothetical constitutes sufficient reason to remand

27  this case.  Moreover, depending on the outcome of the proceedings on remand, the ALJ will have
an opportunity to address plaintiff's other arguments again.  In any event, the ALJ should consider

28  all the issues raised by plaintiff in the Joint Stipulation when determining the merits of plaintiff's case
on remand.

consistent with this Report and Recommendation.

DATED: May 5, 2008

/s/
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE